IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DIANA Q.** [1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

        Defendant.

Civ. No. 6:24-cv-00641-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Diana Q. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) For the reasons provided below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On December 13, 2020, Plaintiff protectively filed an application for disability insurance benefits, as well as supplemental security income, alleging disability beginning on September 1,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Page 1 – OPINION AND ORDER

2018. Tr. 171. The claims were denied initially and on reconsideration. Tr. 188, 207, 217, 228. Plaintiff requested a hearing before an administrative law judge and appeared before ALJ Katherine Weatherly on June 22, 2023. Tr. 46-88. Plaintiff, represented by her attorney, and a vocational expert testified at the hearing. Tr. 46-88. At the hearing, Plaintiff amended her alleged onset date to December 27, 2019, the day after a prior ALJ decision that found Plaintiff not disabled. Tr. 28. The ALJ in the current case found Plaintiff not disabled in a written decision issued August 30, 2023. Tr. 28-40. The Appeals Council denied review on February 13, 2024, making the ALJ's decision the final agency decision. Tr. 1-7. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 49 years of age on her alleged onset date and has a high school education. Tr. 38. She is unable to perform any past relevant work. Tr. 38. She alleges disability due to right and left elbow surgery, tendonitis, rheumatoid arthritis, carpal tunnel, right and left shoulder issues, Arnold-Chiari malformation, dizzy spells, difficulty sleeping, and anxiety with panic attacks. Tr. 171.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

Page 2 – OPINION AND ORDER

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The

Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

Page 3 – OPINION AND ORDER

Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff meets the insured status requirement through December 31, 2023, and that she has not engaged in substantial gainful activity since December 7, 2019, the amended alleged onset date. Tr. 30-31, 51. At step two, the ALJ found that Plaintiff had the following severe impairments: "rheumatoid arthritis, right foot arthritis status-post bunionectomy and hardware removal, left foot arthritis and bunion, bilateral shoulder bursitis, epicondylitis status-post bilateral debridement, left knee osteoarthritis status-post total knee replacement, GERD status-post sleeve-to-bypass conversion." Tr. 31. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 32. The ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> [she] can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes and scaffolds. [She] must avoid concentrated exposure to vibration and hazards such as heights and heavy machinery. [She] can frequently handle and finger bilaterally. [She] can occasionally reach overhead bilaterally.

*Id.* At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 38. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments, including such representative occupations as: school bus monitor, investigator, dealer accounts, and telephone solicitor. Tr. 39. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 40.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53

F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to give clear and convincing reasons to discount her subjective symptom testimony; (2) improperly rejecting the medical opinions of Jim Takach, M.D., and Xavier Stacey, M.D.; and (3) failing to provide a range of jobs in significant numbers at Step 5. Pl.'s Br. 3, ECF 12. For the reasons that follow, the Court concludes that the ALJ did not err. The Commissioner's decision is therefore affirmed.

### I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[2] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

---

[2] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 *(S.S.A. Oct. 25, 2017)*.

Here, Plaintiff testified that due to chronic pain following joint fusion in her right foot, arthritic pain in her hands, anxiety induced panic attacks, and fatigue related to both her pain and anxiety, she is unable to work. Tr. 54, 65-67. Plaintiff testified that she gets swelling in her lower extremities, that she needs to elevate her legs during the day due to the pain, that she can only stand for about 15 minutes at a time, and that her hands constantly cramp and "lock." Tr. 63-64. She further testified that she has difficulty doing laundry, that her son must help her, and that she has difficulty with buttons and opening caps on bottles. Tr. 65. Turning to her anxiety, Plaintiff stated that her doctor increased her Cymbalta medication because her anxiety was getting worse due to the stress she was experiencing as a result of the pain she was in. Tr. 66-67. She clarified that she has difficulty "putting one foot in front of the other" because she is constantly fatigued and in pain. The ALJ rejected this testimony because Plaintiff consistently reported feeling better with treatment, there was a significant decrease in her pain levels, no use of medication for arthritis, her pain was well controlled, she was able to go bike riding and swimming, and she had minimal findings upon examination. Tr. 33.

## A. Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Page 8 – OPINION AND ORDER

A review of the record shows that, while Plaintiff has continued to experience some level of pain, the ALJ's determination that she improved with treatment was supported by substantial evidence in the record. For instance, in October 2019 Plaintiff reported a "significant decrease in pain" in her elbow, hand, and shoulder while undergoing physical therapy for her upper extremities. Tr. 496. Plaintiff reported that her shoulders were feeling less pain. Tr. 489.

Similarly, the ALJ noted that Plaintiff was doing well at an annual exam in January 2020. The full report from that exam shows that her joint pain was ongoing despite "fairly minimal findings on exam or labs," and that she was wearing compression gloves and using topical therapies, with her wrists and elbows "ok" as long as she was not too physical, and that her shoulders were "better" in the context of her not crying every day. Tr. 479. In March, Plaintiff had two appointments in which she first reported less pain in shoulders and elbows but more pain in her hands and feet, only for her to report less pain in her feet and hands but more pain in her right shoulder in the following appointment. Tr. 466. By April, she continued reporting joint pain, noting it was worse on her right side, while also presenting with reduced range of motion in her right shoulder, "minor loss of fist" in her right hand, and that she did better so long as she did not lift more than 15 pounds. Tr. 462-63. In July her pain levels were up and down. Tr. 455.

In January 2021, Plaintiff reported pain in her feet from standing and walking, a "locking" sensation in her first three toes, and cramping of the foot. Tr. 442. Plaintiff underwent right foot surgery in March, and six weeks later reported being "very pleased with the results," with her pain reduced to 1/10. Tr. 1213. Plaintiff also reported worsening pain in her left foot and knee due to the increase in weightbearing following surgery. *Id.* In July, Plaintiff's right foot pain had returned at a 7/10 even though she was able to ambulate without assistance, and the pain in her left foot continued as well. Tr. 1420, 1466.

By February 2022, she had started swimming as part of her physical therapy, and could walk without an assistive device, but pain in her feet limited her walking, and upon examination she had decreased range of motion in left knee and right foot, along with decreased strength bilaterally in her upper and lower extremities. Tr. 1699-1701. In March, April, May, and June, Plaintiff was tolerating physical therapy and making progress, but still having pain, both in her shoulder and lower extremities. Tr. 1756, 1759, 1766, 1769, 1789, 1807, 1817, 1824, 1830. In August, Plaintiff underwent a full left knee replacement. Tr. 1854. Two weeks after her surgery, she reported using a stationary bike for five minutes a day and was taking Gabapentin and Tylenol for pain while using a cane to ambulate. Tr. 1874.

In January 2023, Plaintiff continued reporting pain in her left foot and right mid-foot from December 2022. Tr. 1926, 1958. Due to imaging showing loosening of hardware, a possible source of Plaintiff's pain, Plaintiff underwent hardware removal in February 2023. Tr. 1957. Two weeks post-surgery, Plaintiff reported her pain as a 4/10. The pain on the top of her right food and along the side were gone, but she was now experiencing a burning sensation on the dorsum aspect of her foot. *Id.* Tr. 1973. In March, Plaintiff reported an increase in her hand pain and an inability to grip things, and that the burning pain in her right foot was still present. Tr. 1975-76. By May, her pain had increased to 5/10, and the burning nerve pain continued as well. Tr. 1985. While she had pain throughout her midfoot, she was able to go on a 40-minute hike. *Id.*

Plaintiff has shown that she had fluctuating pain levels, however, there is substantial evidence in the record discussed above to show that she also experienced significant improvement with treatment. While Plaintiff presents a different interpretation of the evidence,

the ALJ's interpretation is reasonable, and we will not second guess it. *See Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

  The ALJ also cited Plaintiff's lack of treatment via rheumatoid arthritis medication as a

valid reason for rejecting her symptom testimony. *See* Tr. 33. The ALJ cites to no evidence

showing she was not treating her rheumatoid arthritis with medication, or that she unreasonably

refused treatment. In fact, at the hearing, Plaintiff testified that she was taking medication for her

arthritis, despite the side effects. Tr. 59-60. As such, this was not a valid reason for discounting

Plaintiff's symptom testimony. However, because the ALJ had a valid reason for discounting the

testimony, the Court finds that this invalid reason was harmless error. *See Stout*, 454 F.3d at

1055-56 (citations omitted).

### B. Daily Activities

  An ALJ may rely on daily living activities as a basis for discounting subjective symptoms

if the claimant's activities contradict his testimony or meet the threshold for transferable work

skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625,

639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities

need not be equivalent to full-time work; it is enough that the claimant's activities "contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not,

however, need to be utterly incapacitated to receive disability benefits, and an ability to complete

certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at

1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for

benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony

she or he finds not to be credible and must explain what evidence undermines the testimony."

*Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Page 11 – OPINION AND ORDER

The ALJ discounted Plaintiff's subjective symptom testimony because despite her allegations of pain in her hands and feet, and anxiety with panic attacks, she is able to ride a bike, swim, bounce on a trampoline, go on a vacation, and provide childcare for her son. Tr. 33. The Court agrees that Plaintiff's activities are inconsistent with her claim for disability. For instance, going for a 40-minute hike clearly contradicts Plaintiff's claim that she experiences constant fatigue and can only stand for 15 minutes at a time. Being able to jump on a trampoline also contradicts her testimony that she experiences constant pain and fatigue. While Plaintiff may be able to explain how these activities were possible, and uncommon, it was not error for the ALJ to find that these activities contradict her claims of a totally debilitating impairment.

## II.    Medical Opinions

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or

Page 12 – OPINION AND ORDER

after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

### A.  Jim Takach, M.D.

Dr. Takach was the State agency's initial medical consultant. Tr. 186. In his function report, Dr. Takach limited Plaintiff to occasionally lifting and carrying 20 pounds, frequently lifting and carrying ten pounds, unlimited pushing and pulling, the ability to stand or walk for six hours in an eight-hour day, and the ability to sit for six hours in an eight-hour day. Tr. 183. Dr. Takach also noted that Plaintiff was not limited in her ability to climb ramps and stairs, balance, stoop, kneel, and crouch, but did find that she could only occasionally climb ladders, ropes, and scaffolds, as well as crawl. Tr. 184. He further opined that she had limited ability to reach overhead bilaterally, handle, finger, and feel. Tr. 184-85.

The ALJ determined that Dr. Takach's opinion was unpersuasive as it pertained to Plaintiff's ability to handle and finger, broadening the limitation to "frequent" handling and fingering bilaterally instead of "occasional" handling and fingering. Tr. 36. Plaintiff contends that the ALJ failed to provide substantial evidence to support this interpretation of Dr. Takach's medical assessment, noting that a prior evaluation and two other physicians found Plaintiff's

Page 13 – OPINION AND ORDER

hand usage to be more limited than the ALJ's finding. Pl.'s Br. 4-7, ECF 12. The ALJ did not err.

The ALJ noted there were no findings of impaired sensation in Plaintiff's hands in Plaintiff's records, and Plaintiff was able to pinch, grasp, and manipulate large and small objects without difficulty, fully extend the hands, make a fist, oppose the fingers, dress and undress well, and lift, carry, and handle light objects at a consultative examination. These were specific and legitimate reasons to discount Dr. Takach's opinion and to determine that Plaintiff should be limited to frequent handling and fingering rather than occasional. Tr. 36 (citing Tr. 1534-41).

As cited by Plaintiff, there were many instances of Plaintiff's ongoing pain in her hands. From August 2021 to March 2023, Plaintiff continued complaining of pain in her hands. *See* Tr. 1558, 1656, 1702-04, 1762, 1817-18, 1824, 1877, 1927, 1935-37, 1975-76. Her last chart note, from June 2023, also contains complaints of hand pain, with her hands being tender to palpation and some noted cramping. Tr. 2198-99. However, aside from intermittent swelling that resolved over time, there were no notable, observable instances of Plaintiff's difficulties with her handling or fingering. The only objective testing done on her hands was the consultative examination, which showed Plaintiff had no difficulties.[3] As such, the ALJ did not err in rejecting Dr. Takach's medical opinion as it related to Plaintiff's hands because inconsistency with medical records and inadequate support by clinical findings serve as specific, legitimate reasons for rejecting a physician's opinion. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

---

[3] Plaintiff also points to a prior RFC determination, the opinion of a treating orthopedic physician from a month prior to the alleged onset date, and a rheumatologist who treated her throughout the relevant period. *See* Pl.'s Br. 4, ECF 12. The defense argues that both the prior RFC determination and a medical evaluation from November 2019 are irrelevant and the ALJ was not required to consider those findings. Def.'s Br. 5, ECF 14. While the prior RFC determination is irrelevant, the physician's opinion is not. *See* Acquiescence Ruling (AR) 00-1(4), 2000 WL 43774, at *3 ("SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim."). Had the prior medical evaluation been a part of the record, this Court would have reviewed it for its relevance.

Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews v. Shalala*, 53

F.3d 1035, 1042–43 (9th Cir. 1995).

 The ALJ's interpretation of the record was reasonable, and the Court will not second

guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th

Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we

will not second-guess it.") (citation omitted).

### B. Xavier Stacey, M.D.

 Dr. Stacey conducted a consultative examination on August 4, 2021, assessing Plaintiff's

workplace limitations based on her impairments. Tr. 1534-43. According to Dr. Stacey's

opinion, Plaintiff had a hesitant, unsteady gait when not being supported by an assistive device,

5/5 muscle strength in all of her upper extremities, normal sensory examination, and symmetric

reflexes. Tr. 1537. While Plaintiff did have tenderness to palpation in her joints, she was able to

lift, carry and handle light objects, squat about 75% and rise with effort, rise from a sitting

position without assistance but had moderate difficulty getting up and down from the exam table,

able to walk on heels briefly but not on her toes due to repairs, and could stand on one foot with

support. Tr. 1538. Dr. Stacey opined that Plaintiff could sit for eight hours in an eight-hour day

for only 30 minutes at a time, stand for two hours in an eight-hour day for 20 minutes at a time,

and walk one hour in an eight-hour day for 10 minutes at a time. Tr. 1541. Dr. Stacey further

opined that Plaintiff could lift ten pounds frequently and 20 pounds occasionally, carry ten

pounds frequently and 20 pounds occasionally, as well as frequently bend, handle, and grasp,

occasionally squat, occasionally reach with her left hand, no reaching limitation in her right

hand, and no limitation on feeling. Tr. 1541. Lastly, Dr. Stacey noted that Plaintiff needed an

assistive device due to "foot surgery/joint disease," and that the exam supported her claims of

"ongoing intermittent flares of non-specific systemic joint disease," as well as continued healing from surgery. *Id.*

The ALJ determined that Dr. Stacey's medical opinion was unpersuasive because it was inconsistent with the overall record, and because the "evidence Dr. Stacey gathered was identified during the time when the claimant was still recovering from her foot surgery and thus is not consistent with the rest of the record." Tr. 37. The ALJ also noted that Dr. Stacey made no mention of Plaintiff being in the "early stages of her recovery." *Id.* Plaintiff contends that the ALJ failed to provide substantial evidence to support this conclusion. Specifically, Plaintiff argues that no physician claimed that being five months post-surgery meant she was still in the "early stages of recovery," and that the ALJ provided inadequate explanations for rejecting Plaintiff's sit, stand, and walk limitations. Pl.'s Br. 7-11, ECF 12. The ALJ did not err.

The ALJ's declaration that Plaintiff was in the early stages of recovery is a reasonable conclusion. Her doctor was hopeful that she would not have any formal restrictions after three months, but the doctor also stated that ongoing pain and swelling were possible for up to a year following surgery. Tr. 1268. In addition, Plaintiff had some recovery following the consultative examination. In November, Plaintiff no longer presented with an assistive device, though her foot continued to be tender to palpation. Tr. 1589. In February 2022, 11 months post-surgery, Plaintiff reported to her physical therapist that her right foot was in more pain now than it was prior to surgery, that her mobility had decreased, that she was more limited in her walking due to the pain, and that swimming was the only activity that helped. Tr. 1699. Upon examination, Plaintiff had decreased lower extremity range of motion in her left knee and right foot, and decreased strength bilaterally in her upper and lower extremities. Tr. 1701. In March, Plaintiff was tolerating her exercises well but was still reporting both foot and knee pain. Tr. 1757. In

Page 16 – OPINION AND ORDER

April, Plaintiff continued tolerating her exercises but was still having problems with ambulation

for any significant length of time, with her therapist noting Plaintiff only worked on her gait for

ten minutes and, during that time, Plaintiff had to alter her gait pattern due to lack of endurance,

and that she felt her knee getting sore. Tr. 1766-67. Plaintiff also reported that she was adding in

more walking, lunges, a bike ride with her son, with plans for more, and had used her trampoline.

Tr. 1769. By the end of April, Plaintiff's physical therapist noted that she had increased her

physical activity and activity tolerance, but pain still limited how much she could do. Tr. 1790.

Finally, the ALJ noted, in particular, Plaintiff's increased physical activity, such as doing

50 bodyweight squats, swimming, a trip to the coast with her family, her ability to drive herself

and walk without an assistive device, and admissions she was improving. *See* Tr. 33 (citing Tr.

1589, 1686, 1699, 1756, 1759, 1766, 1769, 1789, 1874, 1877, 1883, 1885). These facts provide

specific and legitimate reasons, supported by the record, to contradict Dr. Stacey's medical

opinion. While Plaintiff provides a different interpretation of the evidence, the ALJ's

interpretation of the record was reasonable, and the Court will not second guess the ALJ's

findings. *See Carmickle*, 533 F.3d at 1161.

### III.    Step Five

At step five, the ALJ must determine whether a claimant, given their limitations, age,

education, and experience, can perform occupations that "exist in significant numbers in the

national economy." 20 C.F.R. § 416.960(c)(1). A VE provides evidence at a hearing that aids the

ALJ in this determination. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022); SSR 00-

4p. VEs are "professionals who, through their training and experience, have 'expertise and

current knowledge of working conditions and physical demands of various jobs; knowledge of

the existence and numbers of those jobs in the national economy; and involvement in or

knowledge of placing adult workers with disabilities into jobs.'" *Id.* (quoting *Biestek*, 587 U.S. at 100 (quotations and alterations omitted)). In accordance with the regulations, an ALJ may rely on a VE's testimony to support a finding that a claimant can perform occupations that exist in significant numbers in the national economy. *Id.*; *see also* 20 C.F.R. §§ 416.960(b)(2), 416.966(e); *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

Plaintiff argues that if improperly rejected evidence were to be accepted, then she would have limitations including occasional handling or a sit-stand option. Pl.'s Br. 20, ECF 12. Either of these limitations would reduce the number of jobs identified by the VE at the hearing to a single sedentary occupation with 35,814 jobs in the national economy. Pl.'s Br. 20, ECF 12; Tr. 39. Since Plaintiff is "an individual closely approaching advanced age on the alleged disability onset date," with no transferrable skills, then under 201.14 of the Medical–Vocational Guidelines, if limited to sedentary work, Plaintiff would be disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14.

As discussed above, the ALJ provided valid reasons for discounting plaintiff's subjective symptom testimony as well as the medical opinions provided by Dr. Takach and Dr. Stacey. Therefore, there is no error, and the hypotheticals presented to the VE were complete.

## ORDER

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

It is so ORDERED and DATED this *14* day of August, 2025.

MARK D. CLARKE
United States Magistrate Judge